IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CALLIE HAWKINS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CASE NO. |
| ) | |
| CITY OF HUNTSVILLE, ALABAMA; ) | |
| AMANDA CARMINE; and ) | |
| BRIAN HOPKINS, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Callie Hawkins complains of defendants, stating as follows:

### Parties

1.  Callie Hawkins is of legal age and a citizen and resident of the state of Alabama.

2.  Defendant the City of Huntsville, Alabama is a municipality organized and existing under the laws of the state of Alabama.

3.  Defendant Amanda Carmine was employed by the City of Huntsville as a police officer at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama. She is sued in her individual capacity.

4.  Defendant Brian Hopkins was employed by the City of Huntsville as a police officer at all times relevant to the allegations in this complaint and is a resident

and citizen of the state of Alabama.  He is sued in his individual capacity.

## Facts

5. On or about January 2, 2009, around 6:30 p.m., Huntsville police officers Carmine and Hopkins pulled plaintiff over on her way home.

6. When Officer Carmine came to the car door, Officer Carmine told plaintiff she was not going to stop.  Plaintiff said she was looking for a good place to pull over.

7. Officer Carmine told plaintiff to provide her license.  Plaintiff asked what she did wrong.

8. Rather than answer, Officer Carmine called plaintiff a bitch and told plaintiff to give Carmine her license, registration, and proof of insurance.

9. While holding the license in her hand, plaintiff told Officer Carmine she (the officer) did not have to talk to her that way.

10. Officer Carmine told plaintiff to get out of the car and then, without giving plaintiff any time to comply, pulled the door to the car open.

11. Plaintiff then asked (again) what she had done wrong.

12. Rather than answer, Officer Carmine hit plaintiff in the chest with the heavy metal flashlight she was holding in her hand.  Plaintiff then asked the officer what was wrong with her (the officer).  Officer Carmine hit plaintiff again in the chest

2

with her flashlight.

13. Plaintiff told Officer Carmine not to hit her again and again asked Officer Carmine what was wrong with her (the officer) and what did she (plaintiff) did wrong.

14. Rather than answer plaintiff's questions, Officer Carmine sprayed plaintiff with pepper spray.

15. As plaintiff was crying and screaming, plaintiff asked whether this was a racial thing or not. Officer Carmine then called her a bitch (again) and told plaintiff she was married to a black man.

16. Plaintiff told Carmine that didn't make any difference. Officer Carmine then started kicking plaintiff. Officer Hopkins started kicking plaintiff from the passenger side of the car.

17. Fearing for her life, plaintiff started blowing the horn and screaming for help.

18. Officer Carmine told Officer Hopkins to take the keys out of the car so plaintiff would stop blowing the horn.

19. Officer Hopkins got the keys out of the ignition and the keys fell to the floor. The horn, however, did not turn off. Officer Carmine then told Officer Hopkins to take plaintiff's seatbelt off.

20. Officer Hopkins undid plaintiff's seatbelt and ran around the car to the

driver's side, took plaintiff's arm, and twisted it.

21. Officer Carmine grabbed plaintiff's hair with both hands and started to throw plaintiff to the ground.

22. Because plaintiff was entangled in the seatbelt, Officer Hopkins had to let go of plaintiff's arm so plaintiff could be thrown to the ground.

23. While plaintiff was on the ground, Officer Hopkins kneed plaintiff in the back. Officer Carmine kicked plaintiff in the head and shoulders.

24. Eventually, the officers cuffed plaintiff.

25. Officer Hopkins was present during the entire incident and was aware there was no basis for the assault on plaintiff by Officer Carmine. Nevertheless, he took no action to stop it. Instead, he joined in it.

26. At no time during the incident did Carmine and Hopkins have probable cause or even reasonable suspicion that plaintiff was a threat or had committed any crime other than possibly a tag light violation.

27. The video camera in the officers' vehicle recorded the incident.

28. After plaintiff made a complaint with the police department's Department of Internal Affairs, the incident was reviewed by Internal Affairs officers. Despite clear video and/or audio evidence showing misconduct by the officers, no action was taken against any of the officers involved.

29. Plaintiff was arrested and charged with obstructing governmental

operations, harassment, and resisting arrest. The charges were eventually dismissed. Plaintiff did pay a fine for the tag light.

### Count I - 42 U.S.C. § 1983 - Illegal Seizure

30. On or about January 2, 2009, the individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, arrested plaintiff without probable cause, thereby depriving plaintiff of her rights under the Fourth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated plaintiff's right to be free from unlawful seizure.

31. The false arrest was pursuant to a City policy and custom.

32. Prior to the arrest of plaintiff, the City permitted, encouraged, and ratified a pattern and practice of misconduct, including false arrests, in that the City:

   a. failed to discipline or prosecute or in any manner deal with known incidents of misconduct, including incidents of false arrest; and

   b. refused to investigate complaints of misconduct, including complaints of false arrest, and, instead, officially claimed such incidents were justified and proper.

33. The foregoing acts, omissions, and systemic failures and deficiencies are policies and customs of the City and caused the police officers of this municipality to believe that false arrest and other misconduct would be tolerated and that

complaints would not be honestly or properly investigated, with the foreseeable result that officers would falsely arrest plaintiff and other similarly-situated citizens.

34. As a result of the conduct of defendants, plaintiff has been caused to suffer physical and emotional injuries and damages, embarrassment, and humiliation and has been caused to incur legal bills and other expenses.

### Count II - 42 U.S.C. § 1983 - Excessive Force

35. On or about January 2, 2009, the individual defendants, acting under color of law within the meaning prescribed by 42 U.S.C. § 1983, assaulted and battered plaintiff. Defendants did thereby deprive the plaintiff of her rights under the Fourth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated plaintiff's right to be free from excessive force.

36. The use of excessive force on plaintiff was pursuant to a City policy and custom.

37. Prior to the assault of plaintiff, the City permitted, encouraged, and ratified a pattern and practice of misconduct, including unjustified, unreasonable, and excessive use of force, in that the City:

      a. failed to discipline or prosecute or in any manner deal with known incidents of misconduct, including excessive force; and

      b. refused to investigate complaints of excessive force, and, instead,

officially claimed such incidents were justified and proper.

38. The foregoing acts, omissions, and systemic failures and deficiencies are policies and customs of the City and caused the police officers of this municipality to believe that excessive force would be tolerated and that complaints of excessive force would not be honestly or properly investigated, with the foreseeable result that officers would use excessive force on plaintiff and other similarly-situated citizens.

39. As a result of the conduct of defendants, plaintiff has been caused to suffer physical and emotional injuries and damages, embarrassment, and humiliation and has been caused to incur expenses.

### Count III - State Law - False Arrest / False Imprisonment

40. On or about January 2, 2009, the individual defendants arrested plaintiff without probable cause.

41. The conduct of the individual defendants was either negligent, wanton, malicious, willful, or in bad faith.

42. To the extent that the conduct of the individual defendants was negligent or careless, the City is liable for their conduct, as they were acting within the line and scope of their employment with the City.

43. As a result of the conduct of defendants, plaintiff has been caused to suffer physical and emotional injuries and damages, embarrassment, and has been

caused to incur legal bills and other expenses.

### Count IV - State Law - Assault and Battery/Excessive Force

44. On or about January 2, 2009, the individual defendants assaulted and battered and used excessive force on plaintiff.

45. This assault and battery and excessive use of force was either negligent, wanton, malicious, willful, or in bad faith.

46. To the extent that the individual defendants' assault and battery of and use of excessive force on plaintiff was negligent and not intentional, the City is liable for their conduct, as they were acting within the line and scope of their employment with the City.

47. As a result of the conduct of defendants, plaintiff has been caused to suffer physical and emotional injuries and damages, embarrassment, and humiliation and has been caused to incur expenses.

### Other Matters

48. All conditions precedent to the bringing of this suit have occurred.

### Relief Sought

49. As relief, plaintiff seeks the following:

    a. That she be awarded such compensatory damages as a jury shall determine from the evidence she is entitled to recover;

    b. That she be awarded against the individual defendants only such

8

punitive damages as a jury shall determine from the evidence she is entitled to recover;

a. That she be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

b. That she be awarded the costs of this action, her reasonable attorney's fees, and her reasonable expert witness fees;

e. That she be awarded an amount to compensate plaintiff for any adverse tax consequences as a result of a judgment in her favor; and

f. That she be awarded such other and further relief to which he is justly entitled.

**Dated: December 30, 2010.**

Respectfully submitted,

_____
Henry F. Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

9

## Jury Demand

Plaintiff requests a trial by jury.

_____
Henry F. Sherrod III